[No. 1513.]

## ANDREW HART *v.* THE STATE.

1. PRACTICE—CONTINUANCE—DILIGENCE.—See the opinion for a state of case wherein the diligence shown to procure an absent witness was insufficient to authorize a continuance, inasmuch as five months had elapsed without steps to secure the witness.
2. SAME—VARIANCE.—That the alleged value of the animal stolen was fifteen dollars while the proved value was twelve or fifteen dollars is not a variance of consequence.
3. SAME—THEFT—CHARGE OF THE COURT.—See the opinion for a requested charge of the court on the subject of venue, *held*, properly refused, and for an explanation of the trial judge, assigning reasons for refusing it, *held*, correct.
4. SAME.—The charge of the court should not have authorized a verdict for a violation of the estray laws under an indictment for theft. But the error in this case was favorable to the defendant and was not excepted to, and is therefore unavailable.
5. THEFT—FACT CASE.—See evidence held sufficient to sustain a conviction for theft of a horse.

APPEAL from the District Court of San Patricio. Tried below before the Hon. D. P. Marr.

The indictment in this case, filed September 8, 1881, charged the appellant with the theft of an estray mare, the property of some person to the grand jury unknown, in San Patricio county, on the tenth day of May, 1881. The trial resulted in conviction, and the verdict awarded a penalty of five years in the penitentiary.

Robert Weir testified, for the State, that he was the inspector of hides and animals of San Patricio county, in 1881. He then knew the defendant. In the spring of 1881 he saw the mare alleged to have been stolen, for the first time, in San Patricio county, about four miles from the town of San Patricio, where Timon, Welch and others were gathering and herding horses. The witness then examined her brands and found them to be either DMB, DWB, or BMB, with some other brand beneath. The animal was not then in the defendant's brand. She was worth fifteen or sixteen dollars. The witness was well acquainted with the brands given by the people of San Patricio, and did not know

P1

to whom the brand on the animal belonged. He regarded the mare as an estray. He saw the mare several times afterward, with the herds of Timon, Welch and others.

The witness saw the same animal, in June or July following, in Bee county, near Luke Hart's pasture, and between Luke Hart's and Joe Ryan's places. She was then in the brand claimed by the defendant, which was XX over a bar. This brand was fresh. The witness did not see her in the possession of the defendant, but saw her, as stated, near Luke Hart's pasture. He went into that neighborhood with a party of officers to look for stolen stock. From the range in San Patricio county where the witness first saw the mare, to where he saw her in Bee county, in the defendant's brand, was a distance of fifteen or twenty miles. The witness saw the defendant in San Patricio county between the times he saw the mare in San Patricio county and Bee county on the occasions mentioned. Luke Hart, near whose pasture in Bee county the witness saw the mare, is an uncle of the defendant. When the mare's range was in San Patricio county, the defendant was a resident of that county, and had been for some time. The witness had never seen the animal in the defendant's possession, and did not know who put her in the defendant's brand. He had seen Willie O'Docherty and other boys riding her before he saw her in Bee county on the occasion mentioned, but did not see them riding her after he saw her in defendant's brand. The witness did not know whether or not her owner ever sold her to the defendant, nor did he know when or by whom the mare was taken to Bee county.

Willie O'Docherty testified, for the State, that he knew the animal alleged to have been stolen by the defendant, for three years in San Patricio county, and had always known her as an estray. The witness had the mare in his possession for a short time. The witness once saw the mare at Brown's saloon, in the town of San Patricio, in the possession of the defendant and his, defendant's, young brother-in-law. The defendant told the witness on that occasion that he caught the mare near town. She did not then have the defendant's brand on her. She was a brown mare, and was then branded BMB, 'or characters similar. The witness had never known who was the owner of the animal. When the defendant and his brother-in-law came to the saloon with the mare, which was in the spring of 1881, the little brother-in-law was riding the animal. The witness after-

ward saw the defendant riding the mare in the town of San Patricio.

Kirby Lynch testified, for the State, that he saw the mare alleged to have been stolen by the defendant, with Willie O'Docherty's horses, near San Patricio, in the spring of 1881. He knew her then as an estray. The witness was present when the defendant and his little boy nephew or brother-in-law roped the mare in the lane, near San Patricio. Defendant and his brother-in-law, after roping her, led her off in the direction of the town of San Patricio. The witness was on the range often afterwards, but never again saw her on that range. The witness afterwards saw the same animal on the Papalotte, in Bee county. She was then in the defendant's double X bar brand, besides the old brands. The double X bar brand was then fresh. Luke Hart's little son was then herding her with other horses. The witness did not then see her in the possession of the defendant. He did not, of his own knowledge, know who took the mare to Bee county.

Michael Welch testified that he was with Timon and others, in the spring of 1881, gathering horses, near the town of San Patricio, when Robert Weir, the animal inspector, came to them. The mare in question was with the herds of the witness and Timon at that time, and was not then in the defendant's brand. The witness had then known her for some time as an estray. She was a brown mare, worth about twenty-five dollars. Some time afterwards the witness went with the sheriff's party to the Papalotte, in Bee county, in quest of stolen stock, and saw this mare, freshly branded with defendant's brand, in Luke Hart's pasture. The witness saw the defendant in possession of the mare a short time before he saw her on the Papalotte, in Luke Hart's pasture. The defendant rode her to the house of the witness on that occasion. The witness did not know who took the mare to Bee county.

Harvey Timon testified, for the State, in substantially the words of the last witness.

Felix Hart testified, for the State, that he was the son of Luke Hart, and cousin of the defendant. The defendant claimed the double X bar brand, and was authorized to keep stock in the pasture of the witness's father. Defendant had stock in that pasture, including the mare in question, when the officers came there. She afterwards got out of Luke Hart's pasture into that

of Mr. Welder. Witness did not know who put her in his father's pasture.

The motion for new trial set up the questions involved in the rulings of this court.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. At the fall term of the District Court of San Patricio county, and prior to the fourteenth day of September, 1883, appellant was convicted of the theft of a mare, whose owner was unknown to the grand jury, the same being an estray.

The day on which the trial commenced is not given, but from the date of the filing of the statement of facts, and the caption, it was in September, and prior to the fourteenth of that month, 1883. On the fifteenth day of March, same year, the last attachment issued for the absent witnesses named in the last application for a continuance. It appears that these witnesses had been attached by the sheriff, and in company with that officer were on their way to court, when they learned that the court had adjourned; whereupon they returned to their homes in Uvalde county. This occurred at the spring term of the court, by virtue of the attachment which issued on the fifteenth day of March. No other process issued for either of these witnesses. Does the record show diligence? Clearly not. Something over five months had elapsed before the trial since any step had been taken to obtain the attendance of these witnesses. We are of the opinion that the court did not err in overruling the motion to continue the cause.

Defendant alleges also the following errors for a reversal of the judgment.

1. It is insisted that the indictment does not charge that the mare was fraudulently taken. Upon an inspection we find that it does.

2 and 3. That the evidence fails to show that the mare was taken or appropriated in San Patricio county. The first was sufficient, to wit, the taking, which is most evidently shown.

4. That there is a variance in the indictment and proof, in this, that the averred value is fifteen dollars, while that proved is twelve or fifteen dollars. This is frivolous.

5. The court erred in refusing to give charge number one asked by defendant. This charge is as follows: "If the jury believe from the testimony that defendant put his brand on said mare in Bee county, then the offense was committed in Bee county, and the venue has not been proven unless the jury further believes from the testimony that defendant also took the mare to Bee county."

This special charge was refused, the learned judge giving these reasons for so doing: "Refused because, first, not correct as a legal proposition, the same depending upon the place of taking, not the subsequent brand alone, the latter being merely evidence of actual appropriation; the evidence shows the taking in San Patricio county, and probably the branding also." We think the assignment fully answered in the explanation of the learned judge.

6. That the verdict is not supported by the evidence. We are of the opinion that every allegation in the indictment, the venue included, was most clearly established by the proof.

While not objected to at any stage of the proceeding, and being beneficial to defendant, still we deem it advisable to call attention to that part of the otherwise unexceptionable charge, which authorizes the jury to convict the defendant of a violation of the Estray Law, under this indictment for theft. There are elements in the misdemeanor not contained in theft; nor is it included in the charge of theft. See this subject fully, and, I think, exhaustively discussed in the case of *Williams* v. *The State*, 12 Texas Court of Appeals, 395.

We have found no such error in the record as will justify a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

Opinion delivered October 27, 1883.